IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CALVIN M. MANSFIELD, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>FEDERAL LAND BANK OF OMAHA, et al.;<br><br>    Defendants. | **4:14CV3232**<br><br>**FINDINGS AND RECOMMENDATION** |
| CALVIN M. MANSFIELD, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>FEDERAL LAND BANK OF OMAHA, et al.;<br><br>    Defendants. | **4:14CV3233** |
| LARRY RICE,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDERAL LAND BANK OF OMAHA, et al.;<br><br>    Defendants. | **8:15CV00026** |

This matter is before the court on the Plaintiffs' motions to remand their respective cases to state court. (Filing No. 16 in case no. 4:14cv3232, Filing Nos. 18 and 19 in case no. 4:14cv3233, and Filing No. 8 in case no. 8:15cv00026). For the reasons set forth below, the motions should be denied.

BACKGROUND

The Federal Land Bank of Omaha ("FLB of Omaha") was a member of the Federal Farm Credit System. Congress created the Federal Farm Credit System to

provide credit for farmers and ranchers at competitive interest rates. See 12 U.S.C. §2001. The various agricultural lenders within the governmentally created Farm Credit System operate under the supervision and regulation of the Farm Credit Administration ("FCA") – an independent executive branch agency. See First South Production Credit Ass'n v. Farm Credit Association, 926 F.2d 339, 341 (4th Cir. 1990). Congress authorized the Federal Land Banks (now Farm Credit Banks) to hold real estate and mineral interests to fulfill the purpose of the Farm Credit System. See 12 U.S.C. § 2013. The Farm Credit Banks, although federally charted, are privately owned and are managed by private boards of directors.

FLB of Omaha acquired certain severed mineral interests in Sioux and Dawes Counties, Nebraska and recorded its ownership of these mineral interests with the appropriate Register of Deeds. Under Nebraska law a "record owner" of severed mineral interests must take steps to preserve its rights in order to avoid being found to have forfeited its rights in the mineral interests. Neb. Rev. Stat. § 57-229. One such step is to record a "verified claim of interest in the county where the lands from which the interest is severed are located." Neb. Rev. Stat. § 57-229(3). FLB of Omaha filed a Verified Claim of Interest dated July 2, 1969 in Sioux County, County Nebraska and it was recorded August 16, 1969. FLB of Omaha filed a Verified Claim of Interest dated July 2, 1969 in Dawes County, Nebraska and it was recorded on August 5, 1969.

Initially, the Farm Credit System allowed both Federal Land Banks and Federal Intermediate Credit Banks as lending institutions. Congress subsequently mandated the merger of these institutions to create Farm Credit Banks. On July 6, 1988, FLB of Omaha was merged into the Federal Credit Bank of Omaha ("FCB of Omaha") pursuant to that mandate. The FCA issued a charter for FCB of Omaha. FCB of Omaha filed Verified Claims of Severed Mineral Interests on February 19, 1992 in Sioux and Dawes

Counties, Nebraska. The Verified Claims were subsequently recorded. The Verified Claims identified FCB of Omaha as the successor in interest to FLB of Omaha.

On April 1, 1994, the FCB of Omaha merged into AgAmerica. As a result of the merger the FCA chartered a Farm Credit Bank known as AgAmerica, FCB ("AgAmerica"). AgAmerica subsequently merged with AgriBank (an FCA charted bank) (hereinafter the entities will be collectively referred to as "the Bank") on January 1, 2003. AgriBank filed an Affidavit of Merger with the state of Nebraska which expressly purported to vest AgriBank "with title to all property, and other assets of . . . AgAmerica." On July 7, 2014, AgriBank filed a Verified Claims of Severed Mineral Interests in Sioux and Dawes Counties, Nebraska. The Verified Claims were recorded. The Verified Claims noted AgriBank was the successor in interest to AgAmerica, FCB of Omaha and FLB of Omaha.

The disputes in these consolidated cases center on the record ownership of the mineral interests originally owned and recorded by FLB of Omaha for the purposes of [Neb. Rev. Stat. § 57-229](). Plaintiffs filed suit in state court alleging the defendants failed to take actions required by [Neb. Rev. Stat. § 57-229]() in order to preserve their ownership in the Mineral Interests. Specifically, the plaintiffs assert Defendants were not "record owners" of the severed mineral interests and therefore the Verified Claims filed after the initial one filed in 1969 were not effective. Thus, Plaintiffs assert even though Defendants had an ownership interest in the mineral rights, they forfeited their interests by failing to comply with the Nebraska law. That is, the recorded Verified Claims of Severed Mineral Interests were defective because they were not filed by "record owners" for the purposes of [Neb. Rev. Stat. § 57-229]().

Each Plaintiff filed a complaint in Nebraska state court seeking a declaration that Plaintiffs were the respective owners of the mineral rights at issue. The sole question

presented in the complaint is whether Defendants were "record owners" for the purpose of Neb. Rev. Stat. 57-229 at the time the respective Verified Claims were filed. Defendants removed each of these cases to federal court under 28 U.S.C. § 1442 and the cases were subsequently consolidated. Plaintiffs have challenged the removal and seek remand back to state court.

ANALYSIS

Defendants removed the above captioned cases pursuant to 28 U.S.C. § 1442(a)(1) which provides independent federal jurisdictional grounds over cases involving federal officers and agencies, and those acting thereunder. Jacks v. Meridian Res. Co., LLC, 701 F.3d 1224, 1229 (8th Cir. 2012). The statute provides:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue

28 U.S.C. § 1442.

Although a Farm Credit Bank is a government instrumentality, Defendants do not assert it is a government agency for the purposes of § 1442(a)(1). Rather, Defendants argue the Bank acts under the direction of a federal officer and therefore removal is appropriate.

4

The Eighth Circuit requires the presence of four elements for removal under §1442(a)(1), sometimes referred to as "federal officer removal": "(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person,' within the meaning of the statute."[1] Jacks v. Meridian Res. Co., LLC, 701 F.3d at 1230 (citing Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 967 n. 2 (8th Cir. 2007)). Plaintiffs argue Defendants cannot meet its burden of establishing the first three of these elements.

1.   Defendant acting under the direction of a federal officer or agency

In considering the first element, the Eighth Circuit has determined §1442(a)(1), and the term "acting under," are afforded liberal construction. Jacks v. Meridian Res. Co., LLC, 701 F.3d 1224, 130 (8th Cir. 2012). To fulfill the "acting under" requirement, a private person's "actions must involve an effort to assist, or to help carry out, the duties or tasked of the federal superior." Jacks, 701 F.3d at 1230 (internal citations omitted)(emphasis in original).

In order to assess whether the Bank is acting under the direction of a federal officer or agency, it is helpful to review the history and requirements of the Federal Farm Loan Act. "The purpose of the Federal Farm Loan Act and its subsequent amendments was to provide loans for agricultural purposes at the lowest possible interest rates." Federal Land Bank of Wichita v. Board of County Comm'rs, 368 U.S. 146, 151 (1961); see also 12 U.S.C. § 2001 (objective of the Farm Credit System is to "improv[e] the income and well-being of American farmers and ranchers by furnishing sound, adequate,

---

[1] The Plaintiffs do not dispute the Banks are considered "persons" within the meaning of § 1442. The term "persons" includes corporations. Jacks, 701 F.3d at 130, n. 3 (internal citations omitted).

and constructive credit . . . ."). The Banks in this case are federally chartered government instrumentalities that operate under the control and direction of the FCA. That is, the FCA "charter[ed], supervises, and regulates" the Bank. Federal Land Bank of Jackson in Receivership v. Federal Intermediate Credit Bank, 727 F.Supp. 1055, 1056 (S.D. Miss. 1989). Although Federal Land Banks are not federal agencies per se, they have been classified as government instrumentalities which carry out the important function of providing low interest loans for agricultural purposes. See Slotten v. Hoffman, 999 F.2d 333, 335 (8th Cir. 1993).

Additionally, Farm Credit Banks are subject to specific regulations and reporting requirements. See generally 12 C.F.R. §§ 611.110 – 621.32. For instance, Farm Credit Banks must "prepare and submit an accurate and complete report of all bank and association accounts and exposures" on a quarterly basis to the Federal Farm Credit Banks Funding Corporation or other entity as directed by the Farm Credit Administration. See 12 C.F.R. § 621.15. They must also file "reports on condition and performance" on a quarterly basis and provide additional reports as provided by the Chief Examiner of the Farm Credit Association. 12 C.F.R. § 621.12. And they must "account for, report, and disclose to shareholders, investors, boards of directors, and the Farm Credit Administration all material items with respect to performance categories and other property owned . . . ."[2] 12 C.F.R. § 621.10.

The question the court must answer is whether the established purpose of the Bank and its close connection with the Farm Credit Administration create a relationship in which the Bank is "acting under" the federal officers at the Farm Credit Administration. Plaintiffs argue the Bank and each of its predecessors were no more than privately held institutions and, at best akin to private contractors with the government, and they were

---

[2] "Other property owned means any real or personal property, other than an interest-earning asset, that has been acquired as a result of full and partial liquidation of a loan, through foreclosure, deed in lieu of foreclosure, or other means." 12 C.F.R. § 621.6.

not subject to detailed direction by a federal officer. That is, AgriBank was merely acting under the general guidance of the Farm Credit Administration pursuant to the Farm Credit Act. In support of their contention, Plaintiffs cite to Guillory v. Ree's Contract Service, 872 F. Supp. 344 (S.D. Miss. 1994), a case in which a private security firm's employee was sued for failing to prevent an assault in the federal building in which he was contracted to work. The court determined removal under § 1442(a)(1) was improper because the government contract did not provide detailed direction to how the firm was supposed to carry out its duties. Rather, it contained generalizations like "prevent injury to the public" and "maintain law and order." Id. at 374. Plaintiffs assert the Bank operates under similar general controls without detailed direction from the Farm Credit Association.

Plaintiffs also cite to Watson v. Phillip Morris Companies, 551 U.S. 142 (2007), claiming it holds that a private firm's mere compliance with federal law does not constitute acting under a federal official for the purposes of § 1442(a)(1). In Watson, Phillip Morris claimed it acted under a federal official solely because it operated in a highly regulated industry. The Court concluded removal was inappropriate because mere compliance with federal law is not sufficient to support removal under § 1442(a)(1).

Farm credit associations "are more than private institutions with a federal charter. Courts have recognized the 'pervasive involvement of the federal government in the creation and operation of the production credit associations.' " In re Sparkman, 703 F.2d 1097, 1101 (9th Cir. 1983)(citing Schlake v. Beatrice Production Credit Association, 596 F.2d 278, 281 (8th Cir. 1979))(emphasis added). This is true, even when "it acts more like a privately owned institution than a federal agency." In re Sparkman, 703 F.3d at 1101. As detailed above, the Farm Credit Act and the corresponding regulations set forth very specific provision for how Farm Credit Banks are established and must operate, including specific reporting requirements. The type of control the government exerts

7

over Farm Credit Banks is evidenced by the fact the Bank has experienced a mandatory merger pursuant to federal law.

Thus, the Bank is far different from a private contractor that enters into a broad contract with a government agency in furtherance of its private business, like the defendant in Guillory. The sole reason Farm Credit Act institutions exist is to further a government interest. Based upon the involvement of the federal government in the creation and operation of the Banks, Agribank and its predecessors qualify as acting under the direction of a federal agency for the purposes of 28 U.S.C. § 1442(a)(1)

2. Causal connection between the defendant's actions and the official authority

The second element for federal officer removal requires "a nexus, a 'causal connection' between the charged conduct and the asserted official conduct." Bennett v. MIS Corp., 607 F.3d 1076, 1088 (6th Cir. 2010). In the above-captioned cases, the heart of the dispute is whether Agribank is a "record owner" of certain mineral interests. That is, Plaintiffs allege Defendants forfeited their ownership rights by not recording the transfer of interest in the public records.

Congress expressly allowed Farm Credit Banks to own real and/or personal property, including mineral rights, to assist in the governmental purpose of the Farm Credit Act. 12 U.S.C. § 2013(5); see also Federal Land Bank of Wichita, 368 U.S. at 152. Because the record ownership of mineral interests, and Defendants' action or lack thereof in establishing themselves as record owners of the mineral interests, is directly connected to the fulfillment of Defendants' governmental purpose, the second element has been met.

8

3. <u>Colorable federal defense</u>

As the description would suggest, this element is met when the "defense depends on federal law." Jefferson County v. Acker, 527 U.S. 423, 430-31 (1999). "For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001).

Defendants have raised several defenses in this case relating to whether they are "record owners" including: 1) The Banks became owners as a matter of law under the Nebraska Business Corporations Act and federal law; 2) The Banks are "record owners" for the purposes of Neb. Rev. Stat. § 57-299 under controlling Nebraska case law, particularly since the various mergers were a matter of federal public record; and 3) any interpretation of state law that would deprive the Banks of ownership in the mineral rights is preempted by federal law. That is, to the extent an interpretation of state law conflicts with federal law, federal law will be given controlling weight.

Plaintiffs do not assert the Bank did not own the mineral rights by operation of law. Rather, they claim the Bank was not a "record owner" because it failed to properly record its interests in the mineral rights. Therefore, the Bank could not comply with the requirements of Nebraska's dormant mineral interest statutes. (Filing No. 24 at CM/ECF p. 10).

"Where Congress has not expressly preempted or entirely displaced state regulation in a specific field . . . 'state law is preempted to the extent that it actually conflicts with federal law.' " Center for Special Needs Trust Admin., Inc. v. Olson, 676 F.3d 688, 703 (8th Cir. 2012)(quoting Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203-04 (1983)). "An actual conflict arises

9

where compliance with both state and federal law is 'physically impossible,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Id.

Defendants do not argue that Nebraska's law is expressly or completely preempted by the Farm Credit Act. Rather, Defendants assert the Plaintiffs' attempt to claim ownership over the mineral interests via state law frustrates the purpose of the Farm Credit Act; thereby standing as an obstacle to the accomplishment and execution of the objectives of Congress. That is, any interpretation of Nebraska statutes that causes a forfeiture on the Banks' ownership interest in mineral rights because it is not a "record owner"—even though it has an ownership interest as a matter of law—will frustrate AgriBank's ability to carry out its federally mandated purpose.

Frustration of a federal act by otherwise permissible activity under state or local law can provide a colorable defense in actions removed under 28 U.S.C. § 1442(a)(1). See City of Cookeville, Tenn. v. Upper Cumberland Electric Membership Corp., 484 F.3d 380, 391 (6th Cir. 2007). In City of Cookerville, a city attempted to condemn property in which a federal agency had a security interest. State law authorized the City's conduct, but the federal agency argued the condemnation frustrated the purpose of federal law. Although the issue was ultimately decided in favor of the city, the Sixth Circuit determined the agency raised a colorable defense by asserting the local action frustrated a federal act – in that case, the Rural Electrification Act of 1936.

Here, the Defendants rely upon Federal Land Bank of Wichita, 368 U.S. at 152. In that case, Kansas attempted to subject royalties earned from the lease of mineral rights to taxation, notwithstanding a federal statute exempting federal land banks from local taxation. The Supreme Court of Kansas held that ownership of mineral rights did not

10

further the Federal Land Bank's lending functions and as such, the Federal Land Bank was not immune from taxes. The United States Supreme Court reversed, explaining:

> The purpose of the Federal Farm Loan Act and its subsequent amendments was to provide loans for agricultural purposes at the lowest possible interest rates. One method of keeping the interest rate low was to authorize the federal land bank to make a profit to be distributed to the shareholders in the form of dividends. Because the associations of farmer-borrowers were required by law to be shareholders, the distribution of dividends effectively reduced the interest rates. This profit could be earned in two ways: interest from the loans on mortgaged lands and gains on the sale of lands acquired under the provisions of § 781 Fourth. The Kansas Court construes § 781 Fourth (b) to grant the limited power to sell land acquired in satisfaction of a debt only to recoup the loss incurred upon the default. We find no such limitation expressed or implied. The loans on the mortgages are limited to a percentage of the current value of the lands that is considerably less than full value, but there is no limit on the amount of the sale price. The banks are therefore authorized to sell lands acquired after default at the best possible price, absorbing the losses in the reserve accounts and distributing the profits in dividends. It follows that the land banks are not restricted to a sale price merely sufficient to recoup any losses. The retention of a mineral interest might well be a method of increasing the recovery from lands acquired through mortgage defaults. Consequently, we find that the holding of the mineral estate involved here is in furtherance of the bank's governmental function.

Fed. Land Bank of Wichita 368 U.S. at 151-52.

While Plaintiffs attempt to dismiss its import, Fed. Land Bank of Wichita clearly describes at least one way retaining mineral interests directly advances the purposes of the Farm Credit Act. The purposes of the Farm Credit Act could be frustrated by an interpretation of state law which deems any of the Banks' ownership in mineral interests have been forfeited under Neb. Rev. Stat. 57-299. Accordingly, the court finds Defendants have stated a colorable federal defense.

11

IT THEREFORE HEREBY IS RECOMMENDED to Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Plaintiffs' respective Motions for Remand, (Filing No. 16 in case no. 4:14cv3232, Filing Nos. 18 and 19 in case no. 4:14cv3233, and Filing No. 8 in case no. 8:15cv00026), be denied.

The Plaintiffs are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 17th day of April, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.