# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CALVIN M. MANSFIELD *et al.*, | ) | Case No. 4:14CV3232 |
| | ) | (Consolidated - Lead Case) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| FEDERAL LAND BANK OF | ) | |
| OMAHA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | Case No. 4:14CV3233 |
| CALVIN M. MANSFIELD *et al.*, | ) | (Consolidated - Member Case) |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| FEDERAL LAND BANK OF | ) | |
| OMAHA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | Case No. 8:15CV26 |
| LARRY RICE, | ) | (Consolidated - Member Case) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FEDERAL LAND BANK OF | ) | |
| OMAHA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

These consolidated cases, which were removed from state court based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), involve the interpretation of Nebraska's dormant mineral statutes, Neb. Rev. Stat. §§ 57-228 to 57-231.[1] The plaintiffs allegedly own certain tracts of land located in northwest Nebraska. The Federal Land Bank of Omaha ("FLB") transferred these properties in 1941 (Case Nos. 4:14CV3232 and 4:14CV3233) and 1986 (Case No. 8:15CV26), while retaining an undivided one-half interest in the mineral rights. As the result of a series of mergers between 1988 and 2003, these severed mineral interests are currently owned by AgriBank, FCB ("AgriBank"). FLB and AgriBank are both named as defendants, as is FLB's immediate successor-in-interest, Federal Credit Bank of Omaha ("FCB").[2]

The plaintiffs contend the mineral interests are abandoned under Nebraska law because, although verified claims have been recorded by FLB, FCB, and AgriBank, no documents proving AgriBank's successor-in-interest status are on record at the register of deeds. The defendants dispute that Nebraska law imposes such a recording requirement, and argue it is sufficient that AgriBank's successor-in-interest status is a matter of public record under federal law. They also argue federal preemption. By way of a counterclaim, the defendants seek a declaratory judgment quieting title in favor of AgriBank.

---

[1] In denying the plaintiffs' motions to remand, the court found that the defendant banks were acting under the direction of the Farm Credit Administration and had stated a colorable federal defense because the purposes of the Farm Credit Act could be frustrated if the Nebraska statutes resulted in the forfeiture of the banks' ownership of mineral interests (Case No. 4:14CV3232, Filing Nos. 25, 29).

[2] An additional named defendant in Case No. 4:14CV3233 is Mary Rasmussen, who is alleged to the be record owner of an undivided one-half interest in certain mineral rights. Although attorneys with the Husch Blackwell law firm have entered appearances on behalf of all defendants in that case (Filing Nos. 7, 35), this appears to have been done in error because the firm has only filed pleadings and motions on behalf of AgriBank, FLB, and FCB. Thus, any references in this memorandum and order to "the defendants" are not intended to include Ms. Rasmussen.

Both sides have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons discussed below, the defendants' motions seeking dismissal of the plaintiffs' claims will be granted, and the plaintiffs' cross-motions will be denied. The defendants' counterclaims for declaratory relief will be dismissed without prejudice, as moot.

## I. Procedural History

### A. Case No. 4:14CV3232

Case No. 4:14CV3232 was commenced in the District Court of Sioux County, Nebraska, on October 23, 2014, by Calvin M. Mansfield and Sandra K. Mansfield. On November 25, 2014, the defendants removed the action to this court and filed an answer. On December 15, 2014, the defendants filed a Rule 12(c) motion (Filing No. 11). On August 21, 2015, the plaintiffs filed a Rule 12(c) motion (Filing No. 36).[3]

The defendants filed a counterclaim with prior leave of court on August 28, 2015. The plaintiffs answered the counterclaim on September 11, 2015. On October 6, 2015, the defendants filed a Rule 12(c) motion with respect to their counterclaim (Filing No. 45). The plaintiffs have not filed a cross-motion on the counterclaim.

### B. Case No. 4:14CV3233

Case No. 4:14CV3233 was commenced in the District Court of Dawes County, Nebraska, on October 28, 2014, by Calvin M. Mansfield and Sandra K. Mansfield, who are also the plaintiffs in Case No. 4:14CV3232. On November 25, 2014, the defendants removed the action to this court and filed an answer. On December 15,

---

[3] In the interim, the plaintiffs filed a motion to remand (on December 24, 2014), which was denied (on July 28, 2015), and a motion for voluntary dismissal (August 3, 2015). The plaintiffs' motion to dismiss was denied on October 6, 2015.

2014, the defendants filed a Rule 12(c) motion (Filing No. 8). On August 21, 2015, the plaintiffs filed a Rule 12(c) motion (Filing No. 40).[4]

The defendants filed a counterclaim with prior leave of court on August 28, 2015. The plaintiffs answered the counterclaim on September 11, 2015. On October 6, 2015, the defendants filed a Rule 12(c) motion with respect to their counterclaim (Filing No. 49). The plaintiffs have not filed a cross-motion on the counterclaim.

*C. Case No. 8:15CV26*

Case No. 8:15CV26 was commenced in the District Court of Sioux County, Nebraska, on December 9, 2014, by Larry L. Rice, who is represented by one of the same law firms as the Mansfields. On January 16, 2015, the defendants removed the action to this court, answered, and filed an unopposed motion to consolidate the three cases. On August 21, 2015, the plaintiff filed a Rule 12(c) motion (Filing No. 26).[5] On August 31, 2015, the defendants filed a Rule 12(c) motion (Filing No. 29).

The defendants filed a counterclaim with prior leave of court on August 28, 2015. The plaintiff answered the counterclaim on September 11, 2015. On October 6, 2015, the defendants filed a Rule 12(c) motion with respect to their counterclaim (Filing No. 38). The plaintiff has not filed a cross-motion on the counterclaim.

_____

[4] In the interim, as in Case No. 4:14CV3232, the plaintiffs filed a motion to remand (on December 24, 2014), which was denied (on July 28, 2015), and a motion for voluntary dismissal (on August 3, 2015). The plaintiffs' motion to dismiss was denied on October 6, 2015.

[5] In the interim, as in Case Nos. 4:14CV3232 and 4:14CV3233, the plaintiff filed a motion to remand (on January 21, 2015), which was denied (on July 28, 2015), and a motion for voluntary dismissal (on August 3, 2015). The plaintiff's motion to dismiss was denied on October 6, 2015.

## II. Applicable Nebraska Statutes

"Generally, dormant mineral statutes were enacted to address title problems that developed after mineral estates were fractured. At common law, mineral interests could not be abandoned. But permanent or long-term mineral interests could be created during a period of activity in a particular industry, and those interests did not terminate when the activity ceased. So, the mineral estate could be held by owners who had long disappeared from the area, leaving no trace. When the record owner of severed mineral interests could not be contacted, the dormant interests could cloud the titles of surface owners, and further development of the mineral estates became nearly impossible. Legislatures sought to remedy some of those problems by enacting statutes to reunite dormant mineral estates with surface estates." *Ricks v. Vap*, 784 N.W.2d 432, 434 (Neb. 2010) (footnotes omitted). "Nebraska's dormant mineral statutes are representative of those concerns." *Id.*

These statutes, which have not been amended since their passage in 1967, *see* Nebraska Laws 1967, ch. 348, §§ 1-4, provide as follows:

> Any owner or owners of the surface of real estate from which a mineral interest has been severed, on behalf of himself and any other owners of such interest in the surface, may sue in equity in the county where such real estate, or some part thereof, is located, praying for the termination and extinguishment of such severed mineral interest and cancellation of the same of record, naming as parties defendant therein all persons having or appearing to have any interest in such severed mineral interest, and if such parties defendant are not known and cannot be ascertained, they may be proceeded against as unknown defendants under the provisions of Chapter 25, article 3.

Neb. Rev. Stat. § 57-228.

> A severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections

57-228 to 57-231, exercised publicly the right of ownership by (1) acquiring, selling, leasing, pooling, utilizing, mortgaging, encumbering, or transferring such interest or any part thereof by an instrument which is properly recorded in the county where the land from which such interest was severed is located; or (2) drilling or mining for, removing, producing, or withdrawing minerals from under the lands or using the geological formations, or spaces or cavities below the surface of the lands for any purpose consistent with the rights conveyed or reserved in the deed or other instrument which creates the severed mineral interest; or (3) recording a verified claim of interest in the county where the lands from which such interest is severed are located. Such a claim of interest shall describe the land and the nature of the interest claimed, shall properly identify the deed or other instrument under which the interest is claimed, shall give name and address of the person or persons claiming the interest, and shall state that person or persons claim the interest and do not intend to abandon the same.

Neb. Rev. Stat. § 57-229.

If the court shall find that the severed mineral interest has been abandoned, it shall enter judgment terminating and extinguishing it, canceling it of record, and vesting the title thereto in the owner or owners of the interest in the surface from which it was originally severed in the proportions in which they own such interest in the surface.

Neb. Rev. Stat. § 57-230.

In any action filed within two years after October 23, 1967, the owner of a severed mineral interest may enter his appearance and assert his interest therein, and he shall be deemed thereby to have timely and publicly exercised his right of ownership.

Neb. Rev. Stat. § 57-231.

"It is consistent with the statutory purpose of preventing abandonment of mineral estates to require an absent owner of dormant mineral interests to actively exercise those interests. And the plain language of § 57–229 provides that a severed

mineral interest is abandoned unless the record owner of the interest is the one who publicly exercises it." *Ricks*, 784 N.W.2d at 436.

"As to 'record owner,' [the Nebraska Supreme Court has] declined to adopt a rule of liberal or strict interpretation of the dormant mineral interest statutes. But [the Court has] noted that an action to terminate severed mineral interests sounds in equity and that equity abhors forfeitures. Thus, . . . if doubt remain[s] about the meaning of 'record owner,' it should be construed against forfeiture." *Fisher v. Heirs & Devisees of T.D. Lovercheck*, 864 N.W.2d 212, 217 (Neb. 2015).

*III. Undisputed Facts*

*A. Case No. 4:14CV3232*

In a "Deed of Land" dated March 26, 1941, and recorded in the office of the Register of Deeds of Sioux County, Nebraska, in April 1941,[6] FLB conveyed to Lawrence M. Hewett a tract of land in Sioux County described as the "Southeast Quarter of Section 1, in Township 29 North, Range 53,West of the 6th Principal Meridian, ... excepting therefrom one-half of all oil, gas and other mineral rights" (Complaint [Filing No. 1-1 at CM/ECF pp. 11-13];  Answer [Filing No. 3] ¶ 2 & Ex. A [Filing No. 3-1]; Counterclaim [Filing No. 38], ¶23 & Ex. A [Filing No. 38-1]).

The plaintiffs in Case No. 14CV3232, Calvin M. Mansfield and Sandra K. Mansfield, claim to be the record owners of such real estate (Complaint, ¶ 1; Answer to Counterclaim, ¶ 4). The defendants do not admit this claim of ownership.[7]

_____

[6] The plaintiffs allege the deed was "recorded April 11, 1941 in Deed Book X, Page 19" (Complaint, ¶ 2). The defendants admit the deed was "recorded April 1941 in Deed Book X, Page 19 & 20 (Answer, ¶ 2).

[7] As evidence of their ownership interest, the Mansfields have only produced a copy of a warranty deed dated January 14, 2005, in which they convey the property

The plaintiffs allege that FLB is the record owner of the severed mineral interest (Complaint, ¶ 2). The defendants admit that FLB was the record owner until FLB was merged into FCB in 1988 (Answer, ¶ 2).

FLB's "Verified Claim of Severed Mineral Interest," dated July 2, 1969, was recorded in the office of the Register of Deeds of Sioux County, Nebraska, on August 5, 1969, at Misc. Book A-30, Page 420 (Complaint, ¶2; Answer, ¶ 2; Counterclaim, ¶ 25; Answer to Counterclaim, ¶ 25). The verified claim states:

> The Federal Land Bank of Omaha, 206 South 19 Street, Omaha, Nebraska, claims an undivided one-half interest in and to the oil, gas, and minerals in the following-described premises in Sioux County, Nebraska:
>
> SE¼ Sec. 1-29N-53, West of the 6th P.M.
>
> which said interest was reserved by claimant in a deed dated March 26, 1941 conveying the described premises to Lawrence M. Hewitt [*sic*] and recorded in Book X, Page 19 & 20, of the deed records of said County.
>
> This claim is made under the provisions of Chapter 348 of the Laws of 1967 for the purposes of preserving such severed interest and to verify that claimant has no intention to abandon the same.

(*Id.*; Answer Ex. A [Filing No. 3-3]; Counterclaim Ex. C [Filing No. 38-3]).

Effective July 6, 1988, FLB was merged into Federal Credit Bank of Omaha ("FCB"). The charter issued by the Farm Credit Administration ("FCA") states:

---

to themselves as joint tenants with rights of survivorship (Answer to Counterclaim, ¶ 4 & Ex. B [Filing No. 44-2]).

The Farm Credit Administration, in accordance with section 1.3 of the Farm Credit Act of 1971, as amended (the Act),[8] hereby charters a bank established pursuant to the merger of the Federal Land Bank of Omaha and the Federal Intermediate Credit Bank of Omaha, as provided by section 410 of the Agricultural Credit Act of 1987,[9] to be known as the FARM CREDIT BANK OF OMAHA (the Bank). The principal office location of the Bank shall be in the City of Omaha, County of Douglas, State of Nebraska. The Bank is an institution of the Farm Credit System and a federally charted instrumentality. The territory to be served by the Bank shall be all of the States of Iowa, Nebraska, South Dakota, and Wyoming.

By this Federal charter, the Farm Credit Administration hereby authorizes the Bank to exercise all powers conferred on the Bank under the Act and the regulations of the Farm Credit Administration.

(Answer, ¶ 2 & Ex. B [Filing No. 3-2]; Counterclaim, ¶ 26 & Ex. D [Filing No. 38-4]; Answer to Counterclaim, ¶ 26).[10]

FCB's "Verified Claim of Severed Mineral Interest," dated February 19, 1992, was recorded in the office of the Register of Deeds of Sioux County, Nebraska on March 4, 1992, at Misc. Book A-55, Page 504, and states:

---

[8] Section 1.3 of the Farm Credit Act is codified at 12 U.S.C. § 2011. Among other things, it provides that "[t]he banks established pursuant to the merger of each District Federal Intermediate Credit Bank and Federal Land Bank (...“Farm Credit Banks”), as provided in section 410 of the Agricultural Credit Act of 1987, shall be Federally chartered instrumentalities of the United States," and that "[t]he Farm Credit Administration shall ... issue charters for, and approve amendments to charters of, the Farm Credit Banks." 12 U.S.C. § 2011(a)&(b).

[9] The Agricultural Credit Act of 1987 required that "the Federal land bank and the Federal intermediate credit bank of each district shall merge into a Farm Credit Bank ...." Pub.L. No. 100-233, § 410(a).

[10] The facts stated in this paragraph apply to all three cases.

The Farm Credit Bank of Omaha, successor in interest to the Federal Land Bank of Omaha, 206 South 19th Street, Omaha, Nebraska 68102, claims a 50.00% interest in and to the oil, gas, and minerals in the following described premises in Sioux County, NEBRASKA, Township 029 North, Range 063 West of the 6th Principal Meridian Section 01: SE4

This interest was reserved by the claimant in a deed which conveyed the described premises. The particulars of the conveyance are as follows:

| | |
|---|---|
| Deed dated | 03/26/1941 |
| Recorded on | |
| Recorded in | BK X, PG 19 |
| Instrument # | |
| Issued to | Lawrence M. Hewett |

This claim is made under the provisions of NEBRASKA Statute, Neb Rev Stat 57-229 for the purpose of preserving such severed interest and to verify that the claimant has no intention to abandon the same.

(Complaint, ¶ 3; Answer, ¶ 3 & Ex. C [Filing No. 3-3]; Counterclaim, ¶ 30 & Ex. H [Filing No. 38-8]; Answer to Counterclaim, ¶ 30).

On April 1, 1994, FCB merged into AgAmerica, FCB ("AgAmerica"), a federally chartered instrumentality, at which time AgAmerica became the successor-in-interest to FCB  (Answer, ¶ 3; Counterclaim, ¶¶ 32, 33; Answer to Counterclaim, ¶¶ 32, 33). AgAmerica's charter from the FCA states:

The Farm Credit Administration, in accordance with section 1.3 of the Farm Credit Act of 1971, as amended (the Act), hereby charters a Farm Credit Bank to be known as AgAmerica, FCB (the Bank), established pursuant to the consolidation of the Farm Credit Bank of Omaha and the Farm Credit Bank of Spokane, in accordance with section 7.12 of the

Act.[11] The principal office location of the Bank shall be in the City of Spokane, County of Spokane, State of Washington. The Bank is an institution of the Farm Credit System and a federally charted instrumentality.

By this Federal charter, the Farm Credit Administration hereby authorizes said Bank to exercise all powers conferred on the Bank under the Act and the regulations of the Farm Credit Administration within the following territory:

> All the States of Alaska, Idaho, Montana, Nebraska, Oregon, South Dakota, Washington, and Wyoming.

(*Id.;* Answer Ex. D [Filing No. 3-4]; Counterclaim Ex. J [Filing No. 38-10]). There is no evidence that AgAmerica recorded any verified claims for any of the mineral interests that are involved in these cases.

AgriBank was charted by the FCA on May 1, 1992. Its charter, which is substantially similar to AgAmerica's charter, states:

> The Farm Credit Administration, in accordance with section 1.3 of the Farm Credit Act of 1971, as amended (the Act), hereby charters a Farm Credit Bank to be known as AgriBank, FCB (the Bank), established pursuant to the consolidation of the Farm Credit Bank of St. Paul and the Farm Credit Bank of St. Louis, in accordance with section 7.12 of the Act. The principal office location of the Bank shall be in the City of St. Paul, County of Ramsey, State of Minnesota. The Bank is an institution of the Farm Credit System and a federally charted instrumentality.

---

[11] Section 7.12 of the Act is codified at 12 U.S.C. § 2279f. "Banks organized or operating under [United States Code Title 12, Chapter 23] may merge with banks in other districts operating under the same subchapter if the plan of merger is approved by—(1) the Farm Credit Administration Board;(2) the respective Boards of Directors of the banks involved; [and] (3) a majority vote of the stockholders of each bank ...." 12 U.S.C. § 2279f (a).

By this Federal charter, the Farm Credit Administration hereby authorizes said Bank to exercise all powers conferred on the Bank under the Act and the regulations of the Farm Credit Administration within the following territory:

> All the States of Arkansas, Illinois, Michigan, Minnesota, Missouri, North Dakota, and Wisconsin.

(Counterclaim, ¶ 34 & Ex. K [Filing No. 38-11]; Answer to Counterclaim, ¶ 34).

Effective January 1, 2003, the FCA approved the merger of AgAmerica into AgriBank, and amended AgriBank's charter to include AgAmerica's former territory of Nebraska (Answer, ¶ 4 & Ex. E [Filing No. 3-5]; Counterclaim ¶ 35 & Ex. L [Filing No. 38-12], M [Filing No. 38-13]; Answer to Counterclaim, ¶ 35). With the merger, AgriBank became the successor-in-interest to AgAmerica (Counterclaim, ¶ 37; Answer to Counterclaim, ¶ 37).[12]

AgriBank's "Verified Claim of Severed Mineral Interest," dated July 7, 2014, was recorded in the office of the Register of Deeds of Sioux County, Nebraska, on July 14, 2014, at Misc. Book A-66, Pages 593-94 (Complaint, ¶ 4; Answer, ¶ 4; Counterclaim, ¶ 39; Answer to Counterclaim, ¶ 39). The verified claim states:

> AGRIBANK, FCB, a federally chartered corporation, and successor in interest to AgAmerica, FCB, the successor in interest to The Federal Land Bank of Omaha and the Farm Credit Bank of Omaha, whose address is 30 East 7th Street, Suite 1600, St. Paul, Minnesota 55101, HEREBY VERIFIES AND STATES:

> 1.  That it claims severed mineral interests in the following described real property in Sioux County, Nebraska:

---

[12] The facts stated in this and the preceding two paragraphs apply to all three cases.

See Exhibit A attached hereto and made a part hereof, consisting of 1 page(s) [which includes the subject property and indicates the mineral interest is reserved in a deed issued to Lawrence M. Hewett on March 26, 1941, and recorded at Book X, Page 19]

2. That mineral interest was reserved by claimant in a deed which conveyed the premises. That said deed(s) is recorded in the Office of the Register. of Deeds for said County as described in the attached Exhibit A.

3. That AgriBank is still the owner and holder of said reserved severed mineral interest; that it claims all rights secured thereunder and the undersigned verifies that AgriBank has no intention to abandon the same.

4. That this claim is made and filed for record pursuant to the provisions of Nebraska Revised Statute §57-229, for the purpose of preserving and keeping effective such claimed right, title and interest.

(*Id.*; Answer Ex. F [Filing No. 3-6]; Counterclaim Ex. P [Filing No. 38-16]).


*B. Case No. 4:14CV3233*

In the March 26, 1941"Deed of Land" referenced above, FLB also conveyed to Lawrence M. Hewett a tract of land in Dawes County, Nebraska, described as the "Southwest Quarter of Section 6, and Northwest Quarter (except a one-acre school site ...) of Section 7, all in Township 29 North, Range 52,West of the 6th Principal Meridian, ... excepting therefrom one-half of all oil, gas and other mineral rights" (Complaint [Filing No. 1-1], ¶ 3; Answer [Filing No. 3], ¶ 3; Counterclaim [Filing No. 42], ¶ 23 & Ex. A [Filing No. 42-1]; Answer to Counterclaim [Filing No. 48], ¶ 23). The deed was recorded in the office of the Register of Deeds of Dawes County on April 23, 1941, at Deed Book 56, Page 505 (*id.*).

The plaintiffs in Case No. 4:14CV3233, who are also the plaintiffs in Case No. 4:14CV3232, Calvin M. Mansfield and Sandra K. Mansfield, claim to be the record owners of the North Half (N½) of the Southwest Quarter (SW¼) of Section 6, and the Northwest Quarter (NW¼) of Section 7, Township 29 North, Range 52 West of the 6th P.M., Dawes County, Nebraska (Complaint, ¶ 1).[13] As in Case No. 4:14CV3232, the defendants do not admit this claim of ownership.[14]

The plaintiffs allege that FLB is the record owner of the severed mineral interest (Complaint, ¶ 3). The defendants admit that FLB was the record owner until FLB was merged into FCB in 1988 (Answer, ¶ 3).

FLB's "Verified Claim of Severed Mineral Interest," dated July 2, 1969, was recorded in the office of the Register of Deeds of Dawes County, Nebraska, on August 5, 1969, at Book 22 O&G, Page 311 (Complaint, ¶ 4; Answer ¶ 4; Counterclaim, ¶ 24; Answer to Counterclaim, ¶ 24). The verified claim states:

The Federal Land Bank of Omaha, 206 South 19 Street, Omaha, Nebraska, claims an undivided one-half interest in and to the oil, gas,

---

[13] The Mansfields do not claim an ownership interest in the South Half (S½) of the Southwest Quarter (SW¼) of Section 6.

[14] The only proof of ownership the Mansfields have produced is a copy of a warranty deed dated November 10, 2004, in which they convey the North Half (N½) of the Southwest Quarter (SW¼) of Section 6 to themselves as joint tenants with rights of survivorship (Answer to Counterclaim, ¶ 4 & Ex. A [Filing No. 48-1]). The Mansfields also claim to own portions of Section 31, Township 30 North, Range 52 West of the 6th P.M. in Dawes County, Nebraska, which are conveyed in the same deed. With regard to this S31-T30N-R52W6 property, it is alleged that "Mary Rasmussen is the record owner of an undivided ½ interest in all mineral, gas and oil rights reserved for her lifetime through a Deed dated December 30, 1949, and recorded January 24, 1950, in Deed Book 65, page 488, in the office of the Register of Deeds, Dawes County, Nebraska" (Complaint, ¶ 2).

-14-

and minerals in the following-described premises in Dawes County, Nebraska:

> SW¼ Section 6; and NW¼ Section 7; All in 29N-52, West of the 6th P.M. Except 1 acre for school

which said interest was reserved by claimant in a deed dated April 23, 1941 [*sic*][15] conveying the described premises to Lawrence M. Hewett and recorded in Book 56, Page 505, of the deed records of said County.

This claim is made under the provisions of Chapter 348 of the Laws of 1967 for the purposes of preserving such severed interest and to verify that claimant has no intention to abandon the same.

(*Id.*; Answer Ex. B [Filing No. 3-2]; Counterclaim Ex. B [Filing No. 42-2]).

Two "Verified Claim[s] of Severed Mineral Interest," dated February 19, 1992, were recorded by FCB in the office of the Register of Deeds of Dawes County, Nebraska, on March 2, 1992, at Book 38 O&G, Pages 88 and 117 (Complaint, ¶¶ 5, 6; Answer, ¶¶ 5, 6; Counterclaim, ¶ 29; Answer to Counterclaim, ¶ 29). The format of the verified claims is identical; they differ only as to the property descriptions:

The Farm Credit Bank of Omaha, successor in interest to the Federal Land Bank of Omaha, 206 South 19th Street, Omaha, Nebraska 68102, claims a 50.00% interest in and to the oil, gas, and minerals in the following described premises in DAWES County, NEBRASKA,

Township 029 North, Range 052 West of the 6th Principal Meridian Section 06: SW4

[Township 029 North, Range 052 West of the 6th Principal Meridian Section 07: NW4]

---

[15] The deed was recorded April 23, 1941, but was dated March 26, 1941.

This interest was reserved by the claimant in a deed which conveyed the described premises. The particulars of the conveyance are as follows:

| | |
|---|---|
| Deed dated | 03/26/1941 |
| Recorded on | |
| Recorded in | BK 56, PG 505 |
| Instrument # | |
| Issued to | Lawrence M. Hewett |

This claim is made under the provisions of NEBRASKA Statute, Neb Rev Stat 57-229 for the purpose of preserving such severed interest and to verify that the claimant has no intention to abandon the same.

(Answer Ex. C [Filing No. 3-3], Ex. D [Filing No. 3-4]; Counterclaim, ¶ 29 & Ex. F [Filing No. 42-6], Ex. G [Filing No. 42-7]).

On February 13, 2003, AgriBank filed for record in the office of the Register of Deeds of Dawes County, Nebraska, an "Affidavit of Merger of AgAmerica and AgriBank in the State of Nebraska" in which AgriBank's general counsel affirmed that AgAmerica and AgriBank had "entered into an Agreement and Plan of Merger dated October 10, 2002, which agreement has been duly approved by the board of directors of both corporations, the stockholders of both corporations and the Farm Credit Administration, the federal regulator of both corporations," that "[p]ursuant to the Agreement and Plan of Merger, AgAmerica, FCB has merged with and into AgriBank, FCB, the surviving merged corporation, effective January 1, 2003," and that "AgriBank, FCB, as the surviving merged corporation, possesses all of the rights of, is vested with title to all the property and other assets of, and is responsible for all of the obligations of the former AgAmerica, FCB" (Answer, ¶ 7 & Ex. F [Filing No. 3-6]; Counterclaim, ¶ 36 & Ex. N [Filing No. 42-14]; Answer to Counterclaim, ¶ 36).[16] The referenced "Agreement and Plan of Merger" is not in evidence.

---

[16] It has not been shown that a similar affidavit was filed in Sioux County.

AgriBank's "Verified Claim of Severed Mineral Interest," dated September 30, 2014, was recorded in the office of the Register of Deeds of Dawes County, Nebraska, on October 20, 2014 (Complaint, ¶ 7; Answer, ¶ 7; Counterclaim, ¶ 38; Answer to Counterclaim, ¶ 38). The verified claim is nearly identical to the one that was recorded in Sioux County regarding the mineral interests involved in Case No. 4:14CV3232, but the attached "Exhibit A" lists Dawes County properties:

> AGRIBANK, FCB, a federally chartered corporation, and successor in interest to AgAmerica, FCB, the successor in interest to The Federal Land Bank of Omaha and the Farm Credit Bank of Omaha, whose address is 30 East 7th Street, Suite 1600, St. Paul, Minnesota 55101, HEREBY VERIFIES AND STATES:

> 1. That it claims severed mineral interests in the following described real property in <u>Dawes</u> County, Nebraska:

> See Exhibit A attached hereto and made a part hereof, consisting of 1 page(s) [which includes the subject property and indicates the mineral interest is reserved in deeds issued to Lawrence M. Hewett on March 26, 1941, and recorded at Book 56, Page 505]

> 2. That mineral interest was reserved by claimant in a deed which conveyed the premises. That said deed(s) is recorded in the Office of the Register. of Deeds for said County as described in the attached Exhibit A.

> 3. That AgriBank is still the owner and holder of said reserved severed mineral interest; that it claims all rights secured thereunder and the undersigned verifies that AgriBank has no intention to abandon the same.

> 4. That this claim is made and filed for record pursuant to the provisions of Nebraska Revised Statute §57-229, for the purpose of preserving and keeping effective such claimed right, title and interest.

(*Id.*; Answer Ex. G [Filing No. 3-7]; Counterclaim Ex. O [Filing No. 42-15]).

*C. Case No. 8:15CV26*

On February 26, 1986, FLB quitclaimed to Larry L. Rice, the plaintiff in Case No. 8:15CV26, a tract of land in Sioux County, Nebraska, described as "S½ SE¼ of Section 25, Township 24 North, Range 58, West of 6th P.M., ... [e]xcepting and reserving to the grantor and its assigns an undivided one-half interest in all oil, gas, and mineral interests, including geothermal resources" (Complaint [Filing No. 1-1 at CM/ECF pp. 9-11], ¶ 2; Answer [Filing No. 4], ¶ 2 & Ex. A [Filing No. 4-1]; Counterclaim [Filing No. 28], ¶ 28 & Ex. E [Filing No. 28-5]). This "Corporation Quitclaim Deed" was recorded in the office of the Register of Deeds of Sioux County, Nebraska, on April 4, 1986, at Deed Record A-16, Page 72 (*id.*).

The plaintiff alleges that he is the record owner of the above-described real estate; the defendants deny this allegation (Complaint, ¶ 1; Answer, ¶ 1). The plaintiff further alleges that there is a "Warranty Deed that vests ownership of the surface estate" in himself, but only the document he has produced in support of this allegation is the February 26, 1986 quitclaim deed from FLB (Answer to Counterclaim [Filing No. 37], ¶ 28 & Ex. C [Filing No. 37-3]).

The plaintiff alleges that FLB is the record owner of the severed mineral interest (Complaint, ¶ 2). The defendants admit that FLB was the record owner until FLB was merged into FCB in 1988 (Answer, ¶ 2).

FCB's "Verified Claim of Severed Mineral Interest," dated February 19, 1992, was recorded in the office of the Register of Deeds of Sioux County, Nebraska, on March 4, 1992, at Misc. Book A-55, Page 503, and states:

> The Farm Credit Bank of Omaha, successor in interest to the Federal Land Bank of Omaha, 206 South 19th Street, Omaha, Nebraska 68102, claims a 50.00% interest in and to the oil, gas, and minerals in the following described premises in Sioux County, NEBRASKA,

Township 024 North, Range 058 West of the 6th Principal Meridian
Section 25: S2SE4

This interest was reserved by the claimant in a deed which conveyed the described premises. The particulars of the conveyance are as follows:

| | |
|---|---|
| Deed dated | 02/26/1986 |
| Recorded on | 04/04/1986 |
| Recorded in | BK A-16, PG 72 |
| Instrument # | |
| Issued to | Larry L. Rice |

This claim is made under the provisions of NEBRASKA Statute, Neb Rev Stat 57-229 for the purpose of preserving such severed interest and to verify that the claimant has no intention to abandon the same.

(Answer, ¶ 2 & Ex. C [Filing No. 4-3]; Counterclaim, ¶ 31 & Ex. I [Filing No. 28-9]; Answer to Counterclaim, ¶ 31)

AgriBank's "Verified Claim of Severed Mineral Interest," dated July 7, 2014, was recorded in the office of the Register of Deeds of Sioux County, Nebraska, on July 14, 2014, at Misc. Book A-66, Pages 593-94 (Complaint, ¶ 3; Answer, ¶ 3 & Ex. F [Filing No. 4-6]; Counterclaim, ¶ 40 & Ex. P [Filing No. 28-16]; Answer to Counterclaim, ¶ 40). This is the same verified claim that is involved in Case No. 4:14CV3232; the attached "Exhibit A" includes the subject property and indicates the mineral interest is reserved in a deed issued to Larry L. Rice on February 26, 1986, and recorded at Book A-16, Page 72 (*id.*).

## IV. Motions for Judgment on the Pleadings

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R.Civ. P. 12(c). A Rule 12(c) motion

for judgment on the pleadings is evaluated in the same fashion as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). "The grant of either motion is 'appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Ashley County, Ark. v. Pfizer, Inc*., 552 F.3d 659, 665 (8th Cir. 2009)). "A court generally may not consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim or for judgment on the pleadings." *Id.* "Courts may, however, consider 'some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.'" *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

## B. Plaintiffs' Motions

In answering, the defendants state they are without knowledge or information sufficient to admit or deny whether the plaintiffs are the record owners of the subject real estate, and they therefore deny the plaintiffs' allegations of ownership. The documents that have been produced by the plaintiffs are not conclusive of this issue. Consequently, because it cannot be determined from the pleadings and attachments that the plaintiffs have standing to sue under Neb. Rev. Stat. § 57-228, their Rule 12(c) motions must be denied. The plaintiffs' motions fail in any event because the defendants' cross-motions will be granted.

## C. Defendants' Motions Regarding Plaintiffs' Complaints

One method by which the "record owner" of a severed mineral interest can publicly exercise the right of ownership, and thereby prevent abandonment of the interest, is by recording a verified claim in the county where the lands from which such interest is severed are located. Neb. Rev. Stat. § 57-229(3). "Such a claim of interest shall describe the land and the nature of the interest claimed, shall properly identify the deed or other instrument under which the interest is claimed, shall give

name and address of the person or persons claiming the interest, and shall state that person or persons claim the interest and do not intend to abandon the same." *Id.*

While it is undisputed that AgriBank has owned the mineral interests that are the subject of these lawsuits since 2003, when it merged with AgAmerica, and that AgriBank recorded verified claims of interest in Sioux County and Dawes County in 2014, before the suits were filed, the plaintiffs dispute that AgriBank is the "record owner" of the mineral interests within the meaning of Section 57-229. They contend that according to the records maintained in the office of the register of deeds in each county, the owner of the mineral interests is shown to be FLB, which had not publicly exercised ownership of the interests for at least 23 years preceding the filing of the lawsuits. With respect to Case Nos. 4:14CV3232 and 4:14CV3233, FLB last filed verified claims for the mineral interests in August 1969, more than 45 years before suit was filed. In Case No. 8:15CV26, the deed in which FLB reserved the mineral interest was executed in February 1986, more than 28 years before suit was filed.

The meaning of the term "record owner" as used in Section 57-229 has been addressed by the Nebraska Supreme Court in three recent cases: *Gibbs Cattle Co. v. Bixler*, 831 N.W.2d 696 (Neb. 2013); *WTJ Skavdahl Land LLC v. Elliott*, 830 N.W.2d 488 (Neb. 2013); and *Rice v. Bixler*, 854 N.W.2d 565 (Neb. 2014).[17]

In *Gibbs*, which is the leading case, surface owner of various tracts of land in Sioux County, Nebraska, brought suit under Neb. Rev. Stat. § 57-228 against the owners of severed mineral interests in those tracts. One of the named defendants, John Bixler, died in 1996 and had not publicly exercised his ownership rights in the mineral interests in the 23 years prior to 2011, when suit was commenced against him. But his widow and personal representative, Margaret, acquired a life estate in the mineral interests through John's will, which was probated in Sioux County. Margaret argued

---

[17] The plaintiff in *Rice* is also the plaintiff in Case No. 8:15CV26.

that based on the probate records, she was the "record owner" of the mineral interests, and that her 23 years had not yet elapsed.[18]

Gibbs argued, as do the plaintiffs in the present cases, "that the 'record owner' of mineral interests may be determined only from the register of deeds in the county where the interests are located." *Gibbs*, 831 N.W.2d at 700-01. The Nebraska Supreme Court rejected this argument and "conclude[d] that 'record owner' should be construed to include an owner identified through the probate records of the county in which the mineral interests are located."

Although the Court's holding in *Gibbs* is limited, the decision generally supports the defendants' position in the present cases. The Court stated:

> We give statutory language its plain and ordinary meaning. Black's Law Dictionary, which we have relied on in the past to define the term, defines "record owner" as "[a] property owner in whose name the title appears in the public records." That does not resolve the issue because it could be read to support either of the parties' positions. We must construe the term to give effect to the Legislature's intent. We have reviewed the legislative history of the dormant mineral statutes, but it is scant and of little help in resolving the issue. . . .
>
>    . . .
>
> Gibbs' argument has some appeal, but we are unconvinced. Section 57-229 sets forth various ways that the "record owner" may publicly exercise his or her rights of ownership in certain mineral interests. One way is by taking various actions with the interests through "an instrument which is properly recorded in the county where the land

---

[18] Margaret also argued in the district court that John's transfer of the mineral interests to her through his will was a public exercise of ownership, but she did not pursue this argument on appeal. (The district court had rejected the argument, reasoning that the transfer had occurred by operation of law rather than by John's action. *See Gibbs*, 831 N.W.2d at 698.)

from which such interest was severed is located." Another way is by "recording a verified claim of interest in the county where the lands from which such interest is severed are located." These are certainly different avenues of publicly exercising ownership, but as Margaret noted in her reply brief, that "language describes what a record owner can do to protect [his or] her interest from being deemed abandoned. [But i]t does *not* purport to tell us *who the record owner is.*"

The answer is not obvious. But we conclude that "record owner" should be construed to include an owner identified through the probate records of the county in which the mineral interests are located. We reach this conclusion for several reasons. Most notably, the Legislature narrowly defined the term "record owner" in [an unrelated statute] as "the fee owner of real property as shown in the records of the register of deeds office . . .." That the Legislature narrowly defined "record owner" in [that statute] indicates that it is not the ordinary meaning of the term. And because the Legislature *did not* similarly define the term in the dormant mineral statutes, it seems likely that the Legislature intended a different and broader meaning for the term in [§ 57-229](§ 57-229).

. . . Margaret was identified as an owner through probate records in the county where the interests were located. Those qualify as public records . . ..

Moreover, unlike the district court, we believe that this construction is consistent with the language and purpose of the dormant mineral statutes. It is consistent with the statutes' language because the Legislature did not see fit to narrowly define the term . . .. As to being consistent with the statutes' purpose, we acknowledge that the purpose of the dormant mineral statutes was "to address title problems that developed after mineral estates were fractured." But the text of the dormant mineral statutes also demonstrates that the Legislature balanced this purpose with protecting owners' property rights.

This balancing is evident from the statutes themselves. Abandonment does not automatically occur after a set time, but only if and when a surface owner files suit; it is relatively easy for a record owner to publicly exercise his or her ownership rights; and the statutes

provide for a fairly lengthy 23-year period of nonuse before a record owner's rights may be deemed abandoned. Construing "record owner" to include an owner identified through probate records in the county where the interests are located is consistent with the dormant mineral statutes' purpose—it still allows for clearing title records. But that construction also protects identifiable property rights. In other words, much like the statutes themselves, this construction of "record owner" balances the desire to clear title records with protecting identifiable property rights.

Finally, we note that the parties take opposite stances on whether we should apply a liberal or strict construction to "record owner." Gibbs argues that the dormant mineral statutes are remedial statutes and that therefore, we must construe them liberally to fulfill their intended purpose. Margaret, on the other hand, notes that the dormant mineral statutes abrogate the common law against abandonment of real property and that such statutes must be strictly construed. Here, we do not find these interpretative canons helpful. But the dormant mineral statutes result in a forfeiture of property, and "equity abhors forfeitures." As this is an equitable case, if any doubt remains as to the meaning of "record owner," it should be construed against forfeiture.

*Id.* at 701-03 (emphasis in original; footnotes omitted).

*Elliott* involved a very similar fact situation to *Gibbs*. The surface owner of land in Sioux County, Nebraska, sued the owners of severed mineral interests in that land under the dormant mineral statutes to acquire their allegedly abandoned interests. One of the named defendants was Sandra Elliott, who was sued both personally and as the personal representative of the estate of Evelyn Elliott, which was being probated in Sioux County. Although Evelyn had died in 1999, the register of deeds still listed her as the owner of the disputed mineral interests. Evelyn's will devised all of her property to the cotrustees of the "S & G Living Trust," and Sandra was the last surviving trustee. The Nebraska Supreme Court determined that Sandra was the "record owner" of the mineral interests and that she had not abandoned the interest. It again "conclude[d] that the 'record owner' of mineral interests, as used in § 57-229,

-24-

includes an individual identified by probate records in the county where the interests are located." *Elliott*, 830 N.W.2d at 490.

Finally, in *Rice*, the Nebraska Supreme Court declined to expand upon its holdings in *Gibbs* and *Elliott* in order to give effect to verified claims that were recorded in the office of the register of deeds in Sioux County, Nebraska, by the heirs of the estate of a woman whose will was probated in Alabama. Because the Alabama probate documents were not recorded in the office of the Sioux County register of deeds or filed in the probate records of Sioux County before the plaintiff commenced the action, the Court ruled that the heirs had "not established within the time required by § 57-229 that they [were] the record owners of the mineral interests in question." *Rice*, 854 N.W.2d at 575.

Commenting on its holding in *Gibbs*, the Court stated that "[a]ny construction of the term 'record owner' to include an owner whose interests were not recorded in the county where the interests were located would not serve the purpose of clearing title to dormant mineral interests in real estate located in such county." *Rice*, 854 N.W.2d at 573. The Court "point[ed] out that the burden imposed by § 57-229 upon the severed mineral owners is not great," and concluded that "the record owner must [strictly] comply with the  requirements [for recording a verified claim as] set forth in § 57-229(3)." *Id.* at 574 .[19] Significantly, the Court did *not* hold in *Rice* that the term "record owner" must be strictly construed, but instead adhered to its determination in *Gibbs* that "any doubt as to the meaning of the term 'record owner' should be construed against forfeiture." *Id.* at 573.

Because the Nebraska Supreme Court has not had occasion to apply § 57-229 to severed mineral interests that are owned by the surviving corporation of a series of

---

[19] The Court in *Rice* also held that verified claims filed by other defendants did not satisfy the requirements of § 57-229(3) because they failed to properly identify the deed or other instrument under which their interests were claimed.

mergers between federally chartered corporations, this court must attempt to predict what the Nebraska Supreme Court would decide if faced with the issue. *See In re Dittmaier*, 806 F.3d 987, 989 (8th Cir. 2015). In so doing, the court may consider "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Id.* (quoting *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) (per curiam)). I conclude that AgriBank, like its predecessors in interest, is a "record owner" for purposes of § 57-229, and that the verified claims it recorded satisfy the requirements of that section.

Under Nebraska law, the articles of merger for domestic corporations are filed with the Nebraska Secretary of State, *see* Neb. Rev. Stat. § 21-20,132, and, upon the effective date of the articles, [t]he title to all real estate and other property owned by each corporation party to the merger shall be vested in the surviving corporation without reversion or impairment," Neb. Rev. Stat. § 21-20,133(1)(b). "[W]hen two or more corporations effect a merger or consolidation, the surviving corporation possesses all the rights, privileges, immunities, and franchises, as well as all the property—real, personal, and mixed, including the debts—of each of the merging corporations, and any interest vested in any of such corporations shall not revert or be in any way impaired by reason of such merger." *ADT Sec. Servs., Inc. v. A/C Sec. Sys., Inc.*, 736 N.W.2d 737, 757 (Neb. App. 2007) (quoting *Kimco Addition v. Lower Platte South N.R.D.*, 440 N.W.2d 456, 461 (Neb. 1989) (internal quotations and alterations omitted). In short, title passes by operation of law, and is documented by a statewide filing. The Nebraska Supreme Court would almost certainly hold that the surviving corporation is a "record owner" for purposes of § 57-229, even though no record of the merger is filed with the county.

The Nebraska Supreme Court has held that term "record owner" should be given its ordinary meaning of "[a] property owner in whose name the title appears in the public records," and that "public records" are not limited to records that may be found in the register of deeds office. *See Gibbs*, 831 N.W.2d at 701-02. It has specifically held "that the record owner of mineral interests, as used in § 57-229, may

be determined not only from the register of deeds but also from the probate records in the county where the interests are located." *Rice*, 854 N.W.2d at 573. The Court "reasoned that including an owner identified through probate records in the county where the interests were located was consistent with the dormant mineral statutes' purpose of clearing title records and also protected the identifiable property rights." *Id.* Although the Court has since stated that the term "record owner" does not include "an owner whose interests were not recorded in the county where the interests were located," *id.*, that statement was made with reference to probate records, which are maintained at the county level.

Where the register of deeds' records show that a domestic corporation owns a severed mineral interest, articles of merger filed with the Secretary of State should be sufficient to protect that interest, provided that the either the surviving or non-surviving entity has publicly exercised its ownership rights within 23 years prior to a surface owner filing suit pursuant to Neb. Rev. Stat. § 57-228. Because an action brought under § 57-228 "is an equitable case, if any doubt remains as to the meaning of 'record owner,' it should be construed against forfeiture." *Gibbs*, 831 N.W.2d at 703 (footnote omitted).

AgriBank, of course, is not a Nebraska corporation. Because it operates under a federal charter, records of its corporate existence are to be found at the national level. The charters and charter amendments issued by the Farm Credit Administration, a federal agency, are public records, *see* 5 U.S.C. § 552; 12 U.S.C. § 2241, and AgriBank's successor-in-interest status is established by the federal statutes which occasioned the mergers in 1988, 1994, and 2003. Under these circumstances, I believe the Nebraska Supreme Court would consider AgriBank to be a "record owner" for purposes of § 57-229. As a record owner, AgriBank was entitled to publicly exercise its ownership interests in the mineral rights by recording verified claims of interest with the register of deeds, which it accomplished in 2014, prior to the filing of these lawsuits.

AgriBank's verified claims strictly comply with the requirements of § 57-229(3) by describing the land and interests claimed, properly identifying the deeds in which FLB created the severed interests, providing a name and address, and stating that AgriBank claims the interests and does not intend to abandon the same. In each of these filings AgriBank also describes itself as "a federally chartered corporation, and successor in interest to AgAmerica, FCB, the successor in interest to The Federal Land Bank of Omaha and the Farm Credit Bank of Omaha."

The plaintiffs contend AgriBank was required to record with the registers of deeds an "instrument of record" proving it successor-in-interest status, such as "an Agreement and Plan of Merger or the Articles of Merger for each of the bank mergers beginning with the merger between FLB and Farm Credit Bank of Omaha" in order to retain its mineral interests (Case No. 4:14CV3232, Filing No. 35 at CM/ECF p. 6). Such a requirement would impose an unnecessary burden on AgriBank and upset the balance that the Nebraska Legislature sought to achieve between clearing title records and protecting identifiable property rights. *See Rice*, 854 N.W.2d at 573. "[T]he burden imposed by § 57-229 upon the severed mineral owners is not great." *Id.* at 574.

Because I find that AgriBank is a "record owner" for purposes of § 57-229, I do not reach the merits of the affirmative defense of federal preemption. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) ("It is not the habit of the court to decide questions of a constitutional nature *unless absolutely necessary* to a decision of the case.") (emphasis in original; quoting *Burton v. United States*, 196 U.S. 283, 295 (1905)); *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1035 (D. Neb. 2000) ("Federal courts should avoid reaching constitutional claims if the case may be disposed of on alternate grounds.").

Finally, because these cases were removed to this court on the basis of federal officer jurisdiction, and because a supplemental jurisdiction claim is asserted against Mary Rasmussen in Case No. 4:14CV3233, I will enter judgment in that case pursuant to Federal Rule of Civil Procedure 54(b) in favor of FLB, FCB, and AgriBank, and

will remand the case to the District Court of Sioux County, Nebraska, for further proceedings involving the property as to which Ms. Rasmussen is alleged to be the record owner of mineral interests. For the reasons discussed below, I specifically find that the judgment will be final and that there is no just reason to delay its entry.

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction where the Court has dismissed all claims over which it has original jurisdiction. *See Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.,* 758 F.3d 1038, 1045 (8th Cir.2014). While this determination is a matter of discretion for the court, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [or supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988). The Court has weighed each of these factors and finds it appropriate to remand the case to state court. The issue of whether mineral interests owned by Mary Rasmussen have been abandoned under Nebraska law is best determined by a Nebraska court, in the county where the real property is located. The other defendants claim no interest in that property. While the claim could be dismissed without prejudice to its refiling in state court, it is possible the plaintiffs would be adversely affected by the fact that the filing date of the action is vitally important to the issue of abandonment under Neb. Rev. Stat. § 57-229.

Federal Rule of Civil Procedure 54(b) provides that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The rule requires a two-step analysis. "The court 'must first determine that it is dealing with a final judgment ... in the sense that it is an ultimate disposition of an individual claim.'" *Downing v. Riceland Foods, Inc.*, No. 14-3758, 2016 WL 158294, at *3 (8th Cir. Jan. 14, 2016) (quoting *Williams v. Cnty. of Dakota,* 687 F.3d 1064, 1067 (8th Cir. 2012)). A judgment dismissing the plaintiffs' claims against FLB, FCB, and AgriBank clearly is final. "Second, the district court must

determine whether a just reason for delay exists." *Id.* "In making such determination, 'the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals.'" *Id.* (quoting *Williams*, 687 F.3d at 1067).[20] As discussed above, I have concluded that the claim alleged against Mary Rasmussen should be remanded to state court. To accomplish this result, it is necessary to enter a final judgment on the claims that involve only the other defendants. If the court were to exercise supplemental jurisdiction in Case No. 4:14CV3233 after dismissing the other two cases, this could lead to piecemeal appeals. I therefore find no just reason for delay in entering judgment.

### D. Defendants' Motions Regarding Their Counterclaims

In each case, the defendants have counterclaimed for a declaratory judgment "that AgriBank is the record owner of the Mineral Interests, as that term is used in Neb. Rev. Stat. § 57-229, based upon Nebraska law and/or controlling federal law," and have requested the court to "[q]uiet title in the Mineral Interests in favor of AgriBank." (Case No. 4:14CV3232, Filing No. 38). The court granted the defendants leave to file the counterclaims after the plaintiffs moved for voluntary dismissal of their actions, without prejudice.

---

[20] Factors to consider include "(1) the relationship between the adjudicated and unadjudicated claims;(2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Downing*, 2016 WL 158294, at *4 (quoting *Hayden v. McDonald*, 719 F.2d 266, 269 (8th Cir.1983) (per curiam)).

The defendants indicated the counterclaims were precautionary filings that had not been included in the defendants' answers "because the relief AgriBank seeks – a declaration of rights and ownership of the Mineral Interests – is subsumed within Plaintiffs' complaints for declaratory judgment" (Case No. 4:14CV3232, Filing No. 34 at CM/ECF p. 3). They urged the court either to "decline to allow Plaintiffs to dismiss their claims until after the Court rules upon AgriBank's motion for judgment on the pleadings [regarding the plaintiffs' claims], or allow the Lawsuits to proceed on AgriBank's counterclaim[s]" (*id.*).

Because the court has now determined that the defendants' Rule 12(c) motions should be granted with respect to the plaintiffs' complaints, the counterclaims seeking inverse declaratory relief have become moot. Consequently, the counterclaims will be dismissed without prejudice and the defendants' Rule 12(c) motions filed with respect to the counterclaims will be denied without prejudice.

### *V. Conclusion*

AgriBank is the record owner of an undivided one-half interest in mineral rights involving real property as to which the plaintiffs claim to be the surface owners. The verified claims recorded by AgriBank strictly comply with the requirements of Neb. Rev. Stat. § 57-229, and defeat the plaintiffs' claims that the severed mineral interests have been abandoned. Accordingly,

IT IS ORDERED:

1.     In Case No. 4:14CV3232,

    a.     Defendants' first motion for judgment on the pleadings (Filing No. 11) is granted, and Plaintiffs' action is dismissed with prejudice.

b.    Plaintiffs' motion for judgment on the pleadings (Filing No. 36) is denied.

c.    Defendants' counterclaim is dismissed without prejudice, as moot.

d.    Defendants' second motion for judgment on the pleadings (Filing No. 45) is denied without prejudice, as moot.

e.    Final judgment shall be entered by separate document.

2.    In Case No. 4:14CV3233,

a.    Defendants' first motion for judgment on the pleadings (Filing No. 8) is granted, and all claims alleged by Plaintiffs against Defendants Federal Land Bank of Omaha, Farm Credit Bank of Omaha, and AgriBank, FCB, are dismissed with prejudice.

b.    Plaintiffs' motion for judgment on the pleadings (Filing No. 40) is denied.

c.    Defendants' counterclaim is dismissed without prejudice, as moot.

d.    Defendants' second motion for judgment on the pleadings (Filing No. 49) is denied without prejudice, as moot.

e.    Pursuant to Federal Rule of Civil Procedure 54(b), with the court finding no just reason for delay, final judgment shall be entered by separate document regarding all claims alleged against the banks.

f.    Pursuant to 28 U.S.C. § 1367(c)(3), this case is remanded to the District Court of Dawes County, Nebraska (Case No. CI 14-103).

g. The clerk of the court is directed to mail certified copies of the judgment and this memorandum and order to the Clerk of the District Court of Dawes County, Nebraska, and may take any other action necessary to effectuate the remand.

3. In Case No. 8:15CV26,

a. Plaintiff's motion for judgment on the pleadings (Filing No. 26) is denied.

b. Defendants' first motion for judgment on the pleadings (Filing No. 29) is granted, and Plaintiff's action is dismissed with prejudice.

c. Defendants' counterclaim is dismissed without prejudice, as moot.

d. Defendants' second motion for judgment on the pleadings (Filing No. 38) is denied without prejudice, as moot.

e. Final judgment shall be entered by separate document.

DATED this 25th day of January, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.